UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Marcia Adams** | : | Case No.1:07-cv-2543 |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| v. | : | |
| **Michael J. Astrue** | : | **MEMORANDUM & ORDER** |
| **Defendant.** | : | |

The Commissioner of Social Security ("Commissioner") denied social security benefits to the Claimant, Marcia Adams ("Adams"), in the above-captioned case. Adams sought judicial review of the Commissioner's decision and this Court referred the case to Magistrate Judge Kenneth S. McHargh for preparation of a Report and Recommendation ("R&R") pursuant to Local Rule 72.2(b)(1) and 28 U.S.C. §636(b)(1)(B). Both parties filed briefs in support of their respective positions. (Doc. 13-15.) On July 15, 2008, the Magistrate Judge submitted his R&R recommending that final judgment be entered in favor of the Commissioner and that the claimant be denied disability insurance benefits. (Doc. 16.) Adams objected to the Magistrate Judge's R&R. (Doc. 19.)

Adams uses her objections to essentially reargue the points raised in her earlier briefs. While the Magistrate Judge addressed most of these issues in his thorough R&R, two of Adams' contentions merit special treatment.[1] The first addresses the duty of an ALJ to recontact a treating physician. (Doc. 19 at 2); *see* 20 C.F.R. §§ 404.1512(e), 416.912(e); Social Security Policy Ruling

---

[1] This Court wholly adopts the facts as articulated by the Magistrate Judge.

96-5p ("96-5p"). The second asserts that the ALJ's decision was not supported by substantial evidence because the ALJ and Magistrate Judge made "independent medical determination[s]" regarding the petitioner's condition. (Doc. 19 at 11); *Crosby v. Apfel*, No. 00-1311, 2000 U.S. App. LEXIS 34053, at *21 (7th Cir. Dec. 29, 2000). Neither of these objections are sustained, for reasons more fully explained below.

### A. The Duty to Recontact a Treating Physician

Adams asserts that the Commissioner was under a duty to recontact Adams' treating physician under 96-5p and 20 C.F.R. §§ 404.1512(e), 416.912(e). In a section entitled "Requirements for Recontacting Treating Sources," 96-5p explains:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

96-5p. The regulation takes a similar form; it states:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.

20 C.F.R. §§ 404.1512(e), 416.912(e). Taken together, then, the Commissioner is only required to recontact a treating physician when either: 1) the basis of the treating physician's opinion is unclear or; 2) evidence is inadequate to determine whether the petitioner is disabled. *See Couch v. Astrue*, 267 Fed. Appx. 853, 855-56 (11th Cir. 2008) (per curiam); *Deboard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 416 (6th Cir. 2006).[2]

---

[2]While the Magistrate Judge touched upon this issue, it appears that only one other court within this Circuit has ever directly addressed 96-5p. *See D'Angelo v. Comm'r of Soc. Sec.*, 475 F. Supp. 2d 716, 722 (W.D. Mich. 2007) (ordering remand when plaintiff was unrepresented by counsel and the record was devoid of evidence supporting the treating physician's conclusion).

In the instant case, the treating physician, Dr. Rochelle Beachy, completed two inconsistent Residual Function Capacity Forms ("RFCs"). (Doc. 19 at 6.) One RFC indicated that Adams could sit for no more than two hours a day and should keep her legs elevated while seated, whereas the other RFC stated that Adams could sit for six hours a day and did not contain any mention of elevation. (Doc 16. at 13-14.) Both reports implied that Adams could not engage in sedentary work, a conclusion that was rejected by the ALJ. (*Id*.) Adams asserts that neither the ALJ nor the Commissioner was authorized to reject these conclusions without contacting Dr. Beachy for a further explanation of them. (Doc. 19 at 6.)

Adams is incorrect, because inconsistent RFCs do not <u>automatically</u> trigger a mandatory duty to contact a treating physician. To be sure, an ALJ faced with inconsistent RFCs will place himself on more solid ground when he recontacts the treating physician. Inconsistent RFCs will frequently be confusing, resulting in the obligation to recontact the treating source under 96-5p.[3] Here, however, Adams grants that the ALJ appeared able to understand Dr. Beachy's opinion based on the record as a whole. (*See* Doc. 19 at 6). The ALJ did not express confusion regarding the treating physician's opinion, nor did the ALJ appear to require any additional information. (Tr. 22.) Indeed, Dr. Beachy's treatment notes were quite extensive, as was the ALJ's review of them. (Tr. 22, 398-459.) The ALJ simply found that Dr. Beachy's opinion was not supported by the substantial record. (*Id*. at 22; Doc. 16 at 15-18.) On such facts, the Magistrate Judge correctly concluded, for the reasons he explained, that remand was inappropriate. *See Alejandro v. Barnhart*, 291 F. Supp. 2d

---

[3]Inconsistent RFPs might also result in a record from which an ALJ cannot determine disability, bringing 20 C.F.R. §§ 404.1512(e), 416.912(e) into play. As explained more fully below, that is not at issue on these facts.

497, 512 (S.D. Tex. 2003) (The "distinction [between confusion and disagreement] is dispositive.").[4]

### B. The "Substantial Evidence" Requirement

Adams takes great issue with the Magistrate Judge's conclusion that the ALJ's RFC Assessment was supported by substantial evidence in the record. She asserts that this conclusion was only reached because the Magistrate Judge "succumbed to the temptation of playing doctor." (Doc. 19 at 11.) Although her objection is not well-taken on these facts, Adams is certainly correct that neither an ALJ nor Magistrate Judge is permitted to substitute his own medical judgment for those on the record. (*Id.*); *See Crosby*, 2000 U.S. App. LEXIS 34053, at *21. This Court has not hesitated to remand cases where ALJs appear to have reached medical conclusions without the benefit of medical opinions in the record to support them, no matter how logical those conclusions might appear to have been. In this case, however, the ALJ's decision is supported by substantial evidence in the record, which is the only question that this Court is empowered to review. *See Brown v. Comm'r of Soc. Sec.*, No. 5:03CV2246, 2007 U.S. Dist. LEXIS 93602, at *16 (N.D. Ohio Dec. 20, 2007) (citing *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984); 5 U.S.C. § 706(2)(E); 42 U.S.C. § 405(g).)

Adams directs the bulk of her objections at the way the Magistrate Judge assessed the independent medical evidence. (*See* Doc. 19 at 11-13.) She asserts that the Magistrate Judge "play[ed] doctor" when he concluded that Adams could alleviate her conditions by taking her

---

[4]The Court also notes that, like the Magistrate Judge, the Court believes that the ALJ did not wholly reject the opinions of Nurse Rebecca Snider. Clearly, the ALJ would not have been authorized to do so. Instead, the Court agrees that the ALJ considered Nurse Snider's opinions, accepted some, and rejected only those he found to be inconsistent with the substantial evidence of record. While this Court would have preferred to see a more carefully constructed analysis of Nurse Snider's opinions and of the consideration and weight given to them, the Court does not find the ALJ's opinion to be inconsistent with his obligations under 55R 06-3p.

medication and losing weight. (Doc. 19 at 11-12.) This is not correct, because the Magistrate Judge found this conclusion in the medical records, including those of Dr. Beachy and Nurse Snider. (Doc. 16 at 17.) These records contained clear references to diagnosed medical conditions and accompanying medical directives as well as statements that Adams failed to comply with those directives. (*See id.*) They also contained the medical conclusion that Adams' conditions remained unchanged at least partially as a result of Adams' failure to adhere to prescribed medical care. (*See id.*) The Magistrate Judge did not decide what Adams' care should be or even leap to the conclusion that a certain regimen would have helped relieve her conditions, which would have been inappropriate. Instead, he followed the decisions of two of her own care givers in reaching his conclusions.

Adams makes only passing reference to the idea that the ALJ "played doctor." (*See* Doc. 19. at 11.) It seems more accurate to characterize Adams' complaint as one asserting that the ALJ improperly weighed the medical evidence when the ALJ conducted its RFC assessment. (*See* Doc. 13 at 12-22.) Adams asserts that the ALJ should not have discredited certain of Dr. Beachy's opinions as unsupported by the objective record, nor should the ALJ have given weight to other medical evidence that Adams found unreliable. (*See id.*) While there must be medical evidence in the record to support the ALJ's RFC assessment, that determination is one that is ultimately reserved to the Commissioner. *See Brown*, 2007 U.S. Dist. LEXIS 93602 at *16. The ALJ was not required to defer to the conclusions of Adams' treating physician as long as he applied the appropriate factors in finding that there was substantial evidence on the record with which to reject that conclusion. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) ("[T]he ALJ is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion

with the record as a whole, and (5) the specialization of the treating source.") (citing 20 C.F.R. § 404.1527(d).) This ALJ complied with *Bowen*'s requirements. (*See* Tr. at 19-24.)[5]

**C. Conclusion**

In sum, the Court agrees with the Magistrate Judge that the Commissioner's final determination is supported by substantial evidence, and further agrees that the claimant is not entitled to disability insurance benefits.[6] The Court reaches this conclusion only after conducting a *de novo* review of the above issue as well as all other aspects of the R&R to which an objection was filed.

Accordingly, **IT IS ORDERED** that the Magistrate Judge's R&R is **ADOPTED** as supplemented above, the claimant is **DENIED** disability insurance benefits, and final judgment is entered in favor of the Commissioner.

---

[5] This Court would have strongly preferred to see an explicit analysis of each of these factors in connection with the decision to reject the treating physician's recommendation. An ALJ who leaves the Court to "guess" whether that ALJ appropriately applied particular factors puts himself at great risk for remand. Nonetheless, the ALJ is not required to explicitly discuss every factor he considers when there is evidence on the record indicating that the ALJ did indeed consider a given factor. *See Thacker v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 661, 665 (6th Cir. 2004). The Court sees that the ALJ: 1) discussed Adams' visits with her treating sources in some detail. For example, the ALJ chronologies six visits with Nurse Snider spanning from February 2004 to August 2006 (Tr. 19-20) and discusses treatment by Dr. Beachy from September 2004 to March 2006 (Tr. 18); 2) explained why he believed that treatment notes did not support the RFCs (Tr. 19-20, 22); 3) indicated why he found the RFCs inconsistent with the record as a whole (Tr. 19-20, 23) and; 4) discussed Nurse Snider's qualifications relative to the qualifications of the doctor whose opinions the ALJ accepted (Tr. 23). On these facts, the Court cannot say that the ALJ failed to comply with *Bowen*.

[6] The decision to approve the Commissioner's determination in this case is largely driven by the standard of review this Court must employ. In other words, while this Court might well have reached different conclusions regarding the extent of Adams' disability and her ability to do relevant work, this Court is not asked to reach those conclusions in the first instance. As noted, this Court must affirm the decision of the Commissioner as long as there is substantial evidence in the record to support it. *Brown*, 2007 U.S. Dist. LEXIS 93602 at *16. Because the Court concludes there is, the Court may not substitute its judgment for that of the Commissioner.

**IT IS SO ORDERED.**

|  |  |
|---|---|
|  | **s/Kathleen M. O'Malley** |
|  | **KATHLEEN McDONALD O'MALLEY** |
| **Dated: September 25, 2008** | **UNITED STATES DISTRICT JUDGE** |